UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 16-1006-WGY |
| | ) | |
| KALEEM AHMAD, | ) | |
| Defendant | ) | |

<u>Defendant Kaleem Ahmad's Sentencing Memorandum</u>

The Defendant, Kaleem Ahmad, respectfully submits the following memorandum to assist the Court in fashioning a sentence that is appropriate under the circumstances of this case. This memorandum is focused on challenges to the Guideline calculations, the application of the Guidelines to this case, and Kaleem Ahmad's role in the charged conspiracy. Arguments under §3553(a) will be more fully developed at sentencing.

Kaleem Ahmad is an atypical, low-level federal fraud defendant who participated in the charged fraudulent tax scheme due to financial hardship. Kaleem did not set out to harm or defraud anyone. He was not motivated by greed or profit. His only gain from the fraudulent scheme, totaling approximately $50,000 to $75,000, came from a weekly paycheck for working in a warehouse at his brother's wholesale tobacco business.

This case also presents the exceptional circumstance where the Federal Sentencing Guidelines loss calculation bears <u>no relationship</u> to this Defendant's culpability or role in the offense and unfairly enhances the sentence to a degree that runs afoul of 18 U.S.C. §3553(a). As set forth below, the use of loss under the Sentencing Guidelines as a primary sentencing factor achieves a result that is patently unfair and unjust to Kaleem Ahmad. For these reasons, factors that more accurately and fairly

1

weigh the culpability of this Defendant must be considered in fashioning a sentencing that is reasonable and appropriate to the circumstances of this particular defendant.

For the reasons that follow, Kaleem Ahmad submits that a probationary sentence is sufficient, but not greater than necessary, to effectuate the purposes of sentencing set forth in 18 U.S.C. §3553(a).[1]

I.      Introduction

Kaleem Ahmad, a naturalized United States Citizen, moved from his native Pakistan to the U.S. in 1991 to pursue a better life. PSR ¶¶58, 70.  Kaleem and his wife Naeema have three children, ages 15, 13 and 6. PSR ¶68.  Kaleem and his family reside with his brother, co-defendant Muhammad Iqbal.  PSR ¶72.  The third defendant in this case, Raza Ali, is a family friend of Kaleem and his family. PSR ¶71.

Kaleem graduated from high school in Pakistan, but has no advanced degrees and no formal job training. PSR ¶¶79-81.  In his years in the labor force, Kaleem has struggled to make ends meet, earning barely enough income to support his family. PSR ¶¶82-97.  In 2004, Kaleem's financial condition was sufficiently severe that he received food stamp benefits. PSR ¶82.  Since 2001, Kaleem has owned and operated two different convenience stores, but was forced to sell each business because they were not generating enough income. PSR ¶¶87, 89.  Since the sale of his businesses, Kaleem has worked odd jobs delivering packages, pumping gas, stocking shelves, and driving for Uber. PSR ¶¶82-88.  As a result of Kaleem's financial struggles, he has three civil judgments against him for unpaid debts totaling in excess of $15,000. PSR ¶97.

---

[1] The Defendant will request a sentence of one day of imprisonment, deemed served, followed by three years of supervised release.

Kaleem's credit report also reveals a charged-off account totaling $7,100 and four accounts in collection totaling $16,200.  PSR ¶94.

Kaleem first worked for his brother's wholesale business for two or three months in 2010, earning approximately $2,500 to $3,000 per month, but left because he did not like the work. PSR ¶84.  Kaleem returned to his brother's business at the end of 2014 and worked there until approximately the fall of 2015. PSR ¶84.

Kaleem was not an indispensable employee to his brother's company, confirmed by his sporadic employment there and his modest wage.  Like other MSI employees who were not charged criminally, Kaleem worked in one of MSI's warehouses stocking shelves and handling orders. PSR ¶9.

II.     Loss Calculation

Through a somewhat complicated application of the Sentencing Guidelines, the PSR calculated the Defendant's offense level using the Tax Table at U.S.S.G. §2T4.1. ¶¶20-34.  Accepting the government's loss computation, the PSR attributed to the Defendant a loss of $14,261,618.30 that represents the total tax loss attributable to Raza Ali's and Muhammad Iqbal's business for the years 2014 and 2015. PSR ¶17.

The Defendant does not contest the accuracy of the tax loss calculations, but objects to the calculation of loss using the Tax Table at §2T4.1, because the government previously agreed to calculate the Defendant's sentence under U.S.S.G. §2B1.1.  *See* Plea Agreement, ¶3.  Although the Defendant's objections and requests for a variance could likely be resolved the same regardless of whether the Court applies the loss table at §2B1.1 or the Tax Table at §2T4.1, the Defendant asserts that his arguments are more easily resolved under §2B1.1.  *See United States v. Brennick*, 134 F.3d 10, 15 (1st Cir.

1998) (loss overstating the seriousness of the offense under §2B1.1 may be available in

tax cases under the all-purpose departure provisions of §5K2.0); U.S.S.G. §1B1.3

(reasonably foreseeable acts and omissions of others in jointly undertaken criminal

activity are considered in offense level determination).

III.     Foreseeability of Loss

        In order to hold Kaleem Ahmad for the loss attributable to the entire conspiracy

for the time period of Kaleem's employment, it is not enough to prove simply that

Kaleem knew of other participant's criminal acts and knew of the conspiracy's overall

objectives.  *See United States v. Lloyd*, 807 F.3d 1128, 1142-43 (9th Cir. 2015) (internal

citation omitted) (knowledge of others' criminal acts and conspiracy's objectives not

enough to hold defendant responsible for conspiracy's loss; district court erred in holding

telemarketer operator of boiler room responsible for loss attributed to co-conspirator's

boiler room in different location, where boiler rooms operated independently, and did not

share information, resources, or profits).  It is also appropriate to reduce a defendant's

loss for the period in which participated in circumstances where the extent of the loss was

not foreseeable to the defendant.  *See United States v. Treadwell*, 593 F.3d 990, 1004 (9th

Cir. 2010) (despite defendant holding himself out as a founder of the fraudulent

company, pumping up the nationwide sales force, providing sales advice, and traveling

throughout the country for various presentations, the district court properly limited

defendant's losses to the period during which he was involved in the conspiracy, and

properly attributed only half of the conspiracy's loss for the same period because "it

probably wasn't reasonably foreseeable to [the defendant] that the amount of loss was

[so] great.").

Here, the Kaleem's knowledge of the conspiracy's objectives does not establish the requisite foreseeability necessary to hold him responsible for the conspiracy-wide loss, as the PSR has done for the years the Defendant participated in the conspiracy.  In attributing to Kaleem the total tax loss for Ali's and Iqbal's business for the period 2014 and 2015, the PSR made no attempt to assess whether the extent of the loss was reasonably foreseeable to non-organizer participants like Kaleem. *see* PSR ¶¶20-34, and the evidence does establish such foreseeability.  The PSR did not consider the Defendant's precise role in the conspiracy, whether the Defendant participated in the formation of the conspiracy, whether he shared in the profits of the conspiracy, whether he managed or supervised others in the conspiracy, and the degree to which the Defendant understood the scope of the conspiracy.  With the exception of limiting the loss to the period of Kaleem's employment, the PSR drew no distinction between the loss attributable to the Defendant and the conspiracy's organizers, who devised the scheme, directed the day-to-day operations of the business, kept the records of the business, controlled the money, negotiated with suppliers, hired and paid the employees, paid the expenses of the business, set prices, engaged the Pennsylvania suppliers and negotiated the prices with the Pennsylvania distributors.  Without more, the evidence is simply insufficient to establish that it was reasonably foreseeable to Kaleem Ahmad that Iqbal and Ali had failed to pay in excess of $14 million in state excise taxes over a two-year period. *See United States v. Balogun*, 989 F.2d 20, 22 (1st Cir.  1993) (playing an integral role in a conspiracy alone is not enough to establish foreseeability of the co-conspirators' loss).

IV.     Loss Is Not A Fair Measure of Kaleem Ahmad's Culpability

The parties are in the agreement that the loss in this case substantially overstates the seriousness of the offense.  The parties do not agree, however, on the extent to which the loss overstates the seriousness of the offense or the degree to which loss should be weighed in assessing Kaleem Ahmad's culpability.  For the reasons that follow, Mr. Ahmad respectfully urges the Court to place limited emphasis on the loss calculation, attach greater weight to factors that bear on Mr. Ahmad's culpability, and impose a sentence that achieves proportionality.

In developing the Guidelines for federal fraud crimes, the Sentencing Commission has placed significant emphasis on the loss associated with the crime.  *See* U.S.S.G. 2B1.1.  The commentary to §2B1.1 provides that "loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level.  Applying loss as a principal factor in determining offense level, however, can result in Guideline sentencing ranges that bear little or no relationship to a defendant's culpability in certain instances. *See United States v. Stuart*, 22 F.3d 76, 83 (3rd Cir. 1991) ("Where application of the Guidelines' monetary tables bears little or no relationship to the defendant's role in the offense and greatly magnifies the sentence, the district court should have the discretion to depart downward."); *see also United States v. Corsey*, 723 F.3d 366, 378 (2nd Cir. 2013) (Underhill, J. concurring) ("The widespread perception that the loss guideline is broken leaves district judges without meaningful guidance in high-loss cases; that void can only be filled through the common law, which requires that we reach the substantive reasonableness of these sentences.").  In circumstances where loss-driven Guidelines do not reflect the

seriousness of the defendant's crime or provide a fair sentence, courts in both pre- and post-Booker cases have departed or varied significantly from the Guidelines to achieve a fair and just sentence.  *See e.g.*, *United States v. Williams*, 529 Fed.Appx. 6, 9-10 (2nd Cir. 2013) (appeals court agrees with sentencing court that 30-level increase from loss table and resulting 324-405 months range substantially overstated seriousness of defendant's offense of attempting to generate $400 million in IRS refunds from bogus tax returns); *U.S. v. Oakford Corp*, 79 F.Supp. 2d 357, 367-68 (S.D.N.Y. 2000) (13-level departure granted in securities fraud scheme where each individual defendant's gain was small  fraction of overall $15 million gain calculated under insider trading Guideline); *United States v. Costello*, 16 F.Supp.2d 36, 39-40 (D. Massachusetts 1998) (departure to 18-month sentence where value of stolen merchandise established $20,000,000 loss, but defendant profited between $100,000 and $120,000); *United States v. Roen*, 279 F.Supp.2d 986, 991-92 (E.D. Wisconsin 2003) (9-level downward departure in bogus check case where intended loss was $1.2 million but defendant's gain was only $19,000).

Like the cases cited above, application of the Loss Table as a principal factor in calculating Mr. Ahmad's sentence would yield an advisory sentencing range that bears little or no correlation to Mr. Ahmad's culpability and would not come close to approximating an appropriate sentencing range under §3553(a).  Indeed, the government's own attempt to calculate appropriate loss figures in this case underscores the unfairness of attaching significant weight to the Loss Table calculation for Kaleem Ahmad.  The government has asked the Court to evaluate the case as if the loss attributable to co-defendant Muhammad Iqbal was $8,000,000 to $9,000,000 and the loss attributable to Kaleem Ahmad was $4,000,000 to $4,500,000. *Govt. Sentencing*

*Memorandum*, p. 3.  The government's adjusted loss figures result in the same Base

Offense Level for each defendant, with a corresponding GSR of 51-63 months for Iqbal

(assuming a three-level enhancement for his role in the offense and 37-46 months for

Kaleem Ahmad.  *Govt. Sentencing Memorandum*, p. 6.  Thus, the government's

alternative loss figures result in low-end Guideline sentences that differ by 14 months for

defendants whose degree of culpability was miles apart.  Mr. Ahmad was a low-level,

low-wage warehouse worker whose remuneration was in no way tied to the profits or

success of the scheme.  He did not participate in the scheme in a sophisticated fashion, he

did not exercise any significant decision-making authority, and his involvement was for a

limited duration and motivated by financial duress.  Iqbal, on the other hand, owned and

operated the wholesale tobacco business and, along with co-defendant Raza Ali,

orchestrated the scheme to defraud the government of tax revenue.  Iqbal and Ali directed

all of the operations of the scheme for its entire duration, recruited its employees, paid all

associated costs of running the business, and reaped the profits of their illegal enterprise.

Iqbal and Ali also exercised all decision-making authority for the enterprise, made all

strategic decisions for the business, negotiated with the Pennsylvania tobacco

distributors, and directed the flow of cash and tobacco to and from Pennsylvania.  Iqbal

and Ali, as owners of the wholesale business, were also aware of the full extent of their

company's tax obligation and were the individuals responsible for the taxes that were

never paid.  Given the substantial difference in the roles of Mr. Ahmad and Muhammad

Iqbal, a loss calculation that results in a14-month sentencing disparity should not be

emphasized in calculating a reasonable sentence for Mr. Ahmad.

Kaleem Ahmad submits that, given his minor role as a wage laborer for the business's owners, a more appropriate assessment of culpability would place greater emphasis on factors other than loss, such as the relative roles of the scheme's participants; the degree to which the Defendant exercised decision-making authority; the Defendant's motive in participating in the scheme; the correlation between the loss and the amount of the Defendant's gain; the duration of the offense and the Defendant's participation in it; extenuating circumstances in connection with the offense; whether the Defendant initiated the offense or merely joined in criminal conduct initiated by others; and whether the defendant took steps to mitigate harm from the offense. *See* American Bar Association, A Report on Behalf of the American Bar Association Criminal Justice Section Task Force on The Reform of Federal Sentencing for Economic Crimes (2014), www.americanbar.org/content/dam/aba/uncategorized/criminal_justice/economic_ crimes.authcheckdam.pdf.

Applying these factors to Kaleem Ahmad would indeed militate against the government's proposed sentencing range.  While Kaleem Ahmad did not voluntarily withdraw from the conspiracy prior to its detection or take other steps to mitigate the harm of the offense, the remaining factors are all indicative of low culpability.  As noted above, Kaleem Ahmad was a lower level participant in the scheme, he did not exercise decision-making authority, his involvement was motivated by financial hardship, there is no correlation  between the loss and his gain, his participation in the scheme was of limited duration, and he had no involvement in initiating the criminal conduct.  In contrast, Kaleem Ahmad's co-defendant's were organizers of the scheme to defraud, initiated the criminal conduct, were motivated by profit, exercised all decision-making

authority, operated the scheme for its entire duration, and failed to take steps to mitigate harm.  The difference in culpability is stark and the difference in sentences must be substantial.  A mere three-level difference in Guideline offense level and 14-month difference in sentence would result in a sentence for Kaleem Ahmad that is fundamentally unfair and disproportionate to his relative culpability. *See United States v. Marceau*, 554 F.3d 24, 33 (1st Cir.2009) (noting that although §3553(a)(6) is "primarily aimed at national disparities, rather than those between co-defendants . . . a district court may consider differences and similarities between co-defendants at sentencing.)  A probationary sentence would more accurately reflect the culpability of Kaleem Ahmad.

V.    Role Adjustment

U.S.S.G. §3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. §3B1.2, comment. (n.3(A)).  In determining whether to apply a 2-, 3-, or 4-level adjustment, a court "should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v)  the degree to which the defendant stood to benefit from the criminal activity."  "The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the

circumstances and involves a determination that is heavily dependent upon the facts of the case." U.S.S.G. §3B1.2, comment. (n.3(C)).

As previously discussed, Kaleem Ahmad did not participate in the planning or organizing of the criminal activity, he did not exercise or influence decision-making authority, his participation was limited in scope and duration, and his benefit was limited to the wage he was paid. These four factors cannot seriously be disputed. The remaining factor-the degree to which the defendant understood the scope and structure of the criminal activity government-is the primary basis for the government's opposition to a four-level role reduction. While there is no dispute that Kaleem Ahmad was a trusted employee who performed various tasks as requested by the scheme's organizers, this alone does not establish that he understood the full scope and structure of the criminal activity. Kaleem Ahmad did not participate in the conspiracy at a high level. He did not maintain the books and records for the company. There is no evidence that he participated in strategy or decision-making meetings, or that he knew the precise roles of others involved in the scheme. The fact that he understood the general nature of the scheme does not, in and of itself, establish that he understood the full scope and structure of the fraudulent scheme. Thus, the evidence of Kaleem Ahmad's degree of understanding of the scope and structure of the criminal activity does not support the government's primary basis for contesting his eligibility for a four-level role reduction, and the other four factors unquestionably support a four-level reduction.

It is also significant that Kaleem Ahmad was charged with the same offenses as the organizers of the scheme. *See* U.S.S.G. §3B1.2, comment. (n.3(B)) (a defendant should not receive a mitigating role adjustment if he or she benefitted from a reduced

offense level by virtue of having been convicted of an offense that was "significantly less serious" than warranted by the actual offense conduct.)  Moreover, Kaleem Ahmad's small gain relative to the loss amount is further grounds warranting a role reduction. *See* U.S.S.G. §3B1.2, comment. (n.3(A)) ("a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 . . .  that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline.")

CONCLUSION

For the above stated reasons, and for reasons to be advanced at sentencing, a probationary sentence is appropriate under §3553(a) because Kaleem Ahmad is a low-level, first-time offender whose participation in the charged conspiracy was motivated by financial hardship; he is substantially less culpable than others in the conspiracy; his gain was minimal; the loss attributed to the conspiracy is not a proper barometer of his culpability; and proportionality commands a significantly reduced sentence.

Respectfully Submitted,
Kaleem Ahmad
By His Attorney


/s/ William H. Connolly
William H. Connolly
BBO # 634501
20 Park Plaza, Suite 1000
Boston, MA 02116
617-542-0200

Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF), including Assistant U.S. Attorney Stephen Heymann, on October 17, 2016.

/s/ William H. Connolly